UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JENNIFER LATOWSKI,

    *Plaintiff*,                           CASE NO. 11-CV-11086

v.                                       DISTRICT JUDGE THOMAS LUDINGTON
                                         MAGISTRATE JUDGE CHARLES BINDER

NORTHWOODS NURSING CENTER,

    *Defendant*.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**
(Doc. 28)

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED.**

**II.   REPORT**

    **A.   Introduction**

By order of U.S. District Judge Thomas L. Ludington, this case was referred to the undersigned magistrate judge for general case management on March 22, 2011. (Doc. 4.) Plaintiff's Second Amended Complaint (Doc. 17) alleges claims of employment discrimination based on her gender and pregnancy under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Counts I and II), and under the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.1101 *et seq.* (Counts III and IV). Plaintiff also asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111(7) and (5)(a) and the

Michigan Persons with Disability Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101 *et seq.* (Counts V and VI). Finally, Plaintiff alleges a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Count VII), and interference in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617 (Count VIII). Plaintiff seeks both economic and non-economic damages. (Doc. 17 at 9.)

Plaintiff avers that she exhausted her administrative remedies by filing an action with the Equal Employment Opportunity Commission ("EEOC") and that she received a right-to-sue letter on December 16, 2009, as required by Title VII. (Doc. 17 at 2.)

Defendant filed the instant motion for summary judgment on February 28, 2012 (Doc. 28), Plaintiff responded (Doc. 32), and Defendant replied. (Doc. 33.) Oral argument was held on May 1, 2012. Supplemental briefing was ordered and briefs by both parties were filed. (Docs. 36, 37.) Therefore, the motion is ready for report and recommendation.

  **B.**  **Background & Parties' Arguments**

Plaintiff began working as a Certified Nurse Assistant ("CNA") at Defendant North Woods Nursing Center in Farwell, Michigan, in July 2007. (Doc. 8 ¶ 13.) The evidence of record shows that Plaintiff informed Defendant of her pregnancy on Friday, September 26, 2008. (Doc. 37 at 2; Doc. 32 at Ex. 7.) Plaintiff alleges that the following day, September 27, 2008, she was informed that, pursuant to Defendant's policy, she would need to bring in a doctor's note stating that she was medically cleared to continue working. (Doc. 8 ¶ 17.) Defendant clarified that its policy was that "whenever an employee brought any medical issue to North Wood's attention, [Defendant] request[ed] that on that employee's next visit to a doctor, the employee obtain a doctor's note, either informing North Woods of any medically necessary restrictions or stating that the employee

2

was free to work without restrictions despite the medical issue." (Doc. 29 at 11; Ex. C.) Plaintiff does not appear to dispute this policy or that it was applied to other medical circumstances besides pregnancy.

Plaintiff states that even though she was "having a normal pregnancy, had not missed any work due to her pregnancy, and had neither sought nor received any medical restrictions," she asked her doctor for the note, and it was faxed directly to Defendant. (Doc. 8 ¶¶ 18-19.)

Plaintiff worked on September 27, 28, and 30 as scheduled. (Doc. 37 at 2; Doc. 32 at Ex. 7; Doc. 8 ¶ 20.)[1] Plaintiff did not report to work on October 1, 2008, because she received a message via voicemail telling her to not report to work that evening as scheduled because her doctor's note stated that she was restricted from lifting over fifty pounds. (Doc. 8 ¶¶ 21-22; Doc. 37 at 2.) "Plaintiff contacted her doctor to try and have this corrected, but through further apparent miscommunication with that office, that never occurred." (Doc. 32 at 11.) Plaintiff adds that her doctor, "Dr. Traenkle[,] has since clarified (in a letter written after this litigation commenced) that there was nothing unusual about Ms. Latowski's pregnancy, and a 50 lb. weight restriction is typical for an uneventful pregnancy that was not high risk." (Doc. 32 at 11; Ex. 4.)

Plaintiff states that she was told by Judy Doyle, Defendant's Director of Nursing, that "she could not work with any restrictions and was going to be taken off the schedule until she presented a doctor's note stating that she could return to work with no restrictions." (Doc. 8 ¶ 23.) Ms. Doyle also allegedly told Plaintiff that "her only other choice was to reapply for her position after her pregnancy, but that her position would not be guaranteed." (*Id*.; Doc. 32 at 11.)

---

[1]Although Plaintiff was initially confused about the dates as alleged in her amended complaint, the dates used were confirmed by Plaintiff in her most recent filing with the court. (Doc. 37.)

3

Plaintiff states that on October 2, 2008, she went to North Woods and requested a copy of the policy stating that a doctor's note was required from pregnant employees and a copy of her job description. (Doc. 8 ¶ 25.) Plaintiff was told that it was not a written policy; she did, however, obtain a copy of her job description, which "did not include a lifting standard." (*Id.*) Plaintiff's evidence adds that she "was not the only pregnant woman required by North Woods to obtain a doctor's note as soon as they learned of her pregnancy[,] [f]or example, Defendant gave Amanda J----- a letter that clearly is such a directive: 'Upon learning of your pregnancy we requested any information regarding possible work restrictions.'" (Doc. 32 at 10-11.) Ms. J----- "thought it was policy." (Doc. 32 at 11.) Plaintiff notes that "Ms. Doyle admits that North Woods does not permit pregnant individuals with restrictions (or anyone else with a 'non-work related disability') to work at the facility" and that "she told Plaintiff, in justifying the policy, that they could be 'liable if something happened to her baby,' and that 'you wouldn't want to lose your baby.'" (Doc. 32 at 12; Ex. 8.)

Plaintiff alleges that she "reported to work on the evening of October 2, 2008, but was told she was not on the schedule, and further told by Ms. Doyle that she had 'resigned.'" (Doc. 8 ¶ 26.) Plaintiff indicates that she was "walked out of the facility" that evening. (Doc. 37 at 3.)

On October 15, 2008, Plaintiff was informed by Ms. Doyle that she was eligible for leave under the Family Medical Leave Act ("FMLA"). (Doc. 8 ¶ 27.) Plaintiff declined, not wanting to use up her leave during the second trimester of her pregnancy "because she would still be pregnant at the expiration of her twelve-week eligibility." (*Id.*; Doc. 32 at 12.) Plaintiff contends that "Ms. Doyle responded that either she could get the restrictions lifted, or that 'who knows, you might not even be pregnant then.'" (Doc. 32 at 12; Ex. 7.)

4

From the supplemental briefing, Plaintiff summarizes that the evidence shows: "(1) she was directed to provide a doctor's note, despite no indication of her inability to perform the essential functions of her job; and (2) there is insufficient evidence (or at least a factual dispute) that the lifting requirements were, in fact, essential functions of Plaintiff's job." (Doc. 37 at 3.) Defendant summarizes that "as proven by the schedule, Plaintiff worked on the date of her pregnancy disclosure, September 27, 2008, and continued to work as scheduled thereafter until the work restriction note was received on October 1, 2008." (Doc. 36 at 2.)

### C.  Summary Judgment Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-

5

moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

  **D.**  **Analysis & Conclusions**

  **1.**  **Title VII and ELCRA: Counts I - IV**

  **a.**  **General Standards**

Title VII prohibits employers from discharging, or otherwise discriminating against, an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

6

101, 116, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005). Sex discrimination also includes pregnancy discrimination under 42 U.S.C. § 2000e(k) and under ELCRA. *Garlitz v. Alpena Regional Med. Cntr.*, 834 F. Supp. 2d 668, 678 (E.D. Mich. 2011).

The salient issue in any Title VII claim of discrimination is whether the plaintiff was singled out because of her membership in a protected class and treated less favorably than those outside the class, not whether the plaintiff was treated less favorably than "someone's general standard of equitable treatment." *Batts v. NLT Corp.*, 844 F.2d 331, 337 (6th Cir. 1988) (citations omitted). "Because Michigan courts evaluate ELCRA claims at the summary judgment state in the same manner as Title VII, we consider both claims together." *MacDonald-Bass v. J.E. Johnson Contracting*, No. 10-2318, 2012 WL 3289825, at *5 n.1 (6th Cir. Aug. 13, 2012) (citing *Lytle v. Malady*, 458 Mich. 153, 173 n.19 (1998)).

### b.     Direct Evidence

Plaintiff contends that several statements of Ms. Doyle constitute direct evidence of discrimination. Specifically, Plaintiff points to the statement that, once pregnant, Plaintiff could not work until she obtained a doctor's note indicating she had no physical restrictions, the statement that Plaintiff would not want to lose her baby, the statement that if Plaintiff already had miscarriages, she could be at high risk and the doctor may not lift her restrictions, and the statement that Defendant would be liable if anything happened to her baby. Plaintiff also points to a statement by Mr. Ackerman telling her that her belly would be in the way. (Doc. 32 at 14-15, Exs. 6-10.)

7

"Direct evidence 'is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). If direct evidence is present, the burden then shifts to the defendant to show it would have taken the same actions regardless of discriminatory animus. (*Id.*) In considering whether comments constitute direct evidence of discrimination, courts in the Sixth Circuit consider: (1) Whether the disputed comments were made by the decision maker; (2) whether the alleged comments related to the decision-making process; (3) whether the statements were vague, ambiguous, or isolated remarks; and (4) whether the disputed remarks were proximate in time to the termination or other adverse action. *Cooley v. Carmike Cinemas*, 25 F.3d 1325, 1330 (6th Cir. 1994). "[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d. 696, 708 (6th Cir. 2008).

There is no evidence that Mr. Ackerman had any part of the decision making process and, thus, I suggest that his statement cannot be considered direct evidence. Furthermore, I suggest that Ms. Doyle's comments, even if viewed in addition to Mr. Ackerman's comment, are too vague or unrelated to a discriminatory animus to be considered direct evidence of discrimination. *See Suits v. The Heil Co.*, 192 Fed. App'x 399, 402-04 (6th Cir. 2006) (comments that the plaintiff was "not the type of person to leave her child" and "How are you going to come back to work and work here and leave that baby? You know you are not going to be able to do that" were not direct evidence of pregnancy or gender discrimination); *Bergman v. Baptist Healthcare System, Inc.*, 167 Fed.

8

App'x 441, 444-46 (6th Cir. 2006) (where the plaintiff had a pregnancy-related lifting restriction, comments that work "would be a risk . . . and they couldn't have that" was not direct evidence of discrimination); *Rock v. T.N.H.D. Partners, LLC*, 833 F. Supp. 2d 802, 815-16 (M.D. Tenn. 2011) (comments that the plaintiff had "gravy train hours because she was a single mom" and that she was "already handicapped because you are a single mom" and "Don't you have more important things to take care of?" were too abstract to constitute direct evidence of discrimination); *Malone v. USA Today*, 348 F. Supp. 2d 866, 873 (E.D. Mich. 2004) (supervisor's question whether plaintiff would be coming back to work and statement, "Why don't you take some time, think about what kind of job you will be able to do or will make you happy, think about it" were not direct evidence of discrimination); *Szabla v. St. John Hosp. & Medical Center*, No. 09-13042, 2011 WL 3714068, at *4 (E.D. Mich. Aug. 24, 2011) (comments that the plaintiff was "too f-ing old" to be pregnant and that the plaintiff "must have some old eggs up there" were not direct evidence of discrimination).

I will therefore next consider whether Plaintiff can establish a *prima facie* case of discrimination.

    **c.**    **Indirect evidence**

Where there is no direct evidence of discrimination, the plaintiff bears the initial burden of production under the *McDonnell Douglas* burden-shifting scheme, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to show a prima facie case of discrimination. *Michael v. Caterpillar Financial Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). The elements of a *prima facie* case of discrimination under Title VII when focused on pregnancy discrimination are: (1) plaintiff is pregnant, (2) she was qualified for her job, (3) she was subjected

9

to an adverse employment action, and (4) a nexus between her pregnancy and the adverse employment decision. *Mullins v. U.S. Bank*, 296 Fed. App'x 521, 524 (6th Cir. 2008) (citing *Asmo v. Keane, Inc.,* 471 F.3d 588, 592 (6th Cir. 2006)).

If the plaintiff makes a prima facie case, the burden then shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the employment decision. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). To meet this burden, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons" for its decision. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). "An articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Id.* at 256 n.9. Finally, if the defendant meets its burden of articulation, the burden shifts back to the plaintiff to show that the reason put forth by the defendant is pretextual, which can be done "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (citation and quotation omitted).

In the instant case, the first element of a *prima facie* case is not disputed, as Plaintiff was pregnant. However, the next three elements are disputed: namely, whether (2) she was qualified for her job, (3) she was subjected to an adverse employment action, and (4) there is a nexus between her pregnancy and the adverse employment decision. *Mullins,* 296 Fed. App'x at 524.

I suggest that Plaintiff is unable to establish that she was qualified for her job. Plaintiff contends that there is at least a factual dispute as to whether the "lifting requirements were, in fact, essential functions of Plaintiff's job." (Doc. 37 at 3.) Plaintiff does not challenge Defendant's

10

assertion that its policy was to require employees who had any medical conditions, not just pregnancy, to ask for a doctor's note indicating whether they are under any restrictions as a result of the medical condition and that Defendant also had a policy of not accommodating restrictions caused by non-work related injuries. (Doc. 29 at 11; Ex. C.) In other words, Plaintiff does not appear to dispute that Defendant's policy was "pregnancy-blind" and therefore, I suggest, valid. *Serednyl v. Beverly Healthcare, LLC*, 656 F.3d 540, 548-49 (7th Cir. 2011) (policy that denied a light work accommodation for non-work-related injuries was "pregnancy-blind" and thus, valid). Instead, Plaintiff appears to argue that pregnancy alone should not have triggered the policy's application without any evidence that Plaintiff could not perform the essential functions of her job and that the lifting requirements were not "essential functions of Plaintiff's job." (Doc. 37 at 3.)

Since the position of CNA requires physical activity, Defendant required prospective CNA employees to pass a physical exam, which Plaintiff took and passed prior to beginning her employment with Defendant. (Doc. 29 at 11; Ex. A at 13-14.) The exam Plaintiff underwent tested her physical strength and included lifting a fifty-pound object from the floor and carrying it across the room, required her to support the weight of a man leaning against her, and to push against and resist the weight of a man laying on top of her. (*Id.*) Plaintiff also testified during her deposition that her job included helping patients get in and out of wheelchairs, moving on and off the toilet, showering, dressing, and turning patients while the patients were in bed. (Doc. 29 at 10; Ex. A at 17-38; Ex. B at 42-47, 70-74.) Whether or not the weight lifting restriction was actually medically necessary or not, Plaintiff's doctor informed Defendant that Plaintiff could not lift fifty pounds and that restriction was never modified or lifted. (Doc. 32 at 11, Ex. 4.) This evidence, I suggest, reveals that Plaintiff was not qualified for her job. *See Grace v. Adtran, Inc.*, No. 11-11263, 2012

WL 1449270, at *2 (11th Cir. Apr. 27, 2012) ("so long as [the plaintiff's] lifting restriction was in place, she could not meet the qualifications for her position").

In *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 25-26 (1st Cir. 2001), the court held that "the ability to lift fifty pounds on a consistent basis was an essential function of the clinical nurse position[]" and that such a conclusion was not altered by her purported evidence that she had a special position created for her and that she did not regularly lift such weight because other nurses would help her. *Id.; accord Guneratne v. St. Mary's Hosp.*, 943 F. Supp. 771, 774 (S.D. Tex. 1996) (clinical nurses are "involved in physically demanding lifting tasks including turning patients, helping them walk, lifting patients in and out of wheelchairs, and helping them bathe" such that heavy lifting was an essential function that the plaintiff could not perform due to lifting restrictions). The court noted that merely because a job could be restructured did not show that the function was non-essential. *Phelps*, 251 F.3d at 26. The court also noted that the employer is under no obligation to exempt employees from essential functions or to reallocate essential functions to other employees. *Id.* I suggest that the same analysis applies here and that Plaintiff has not come forward with sufficient evidence showing that she remained qualified for her job once she became pregnant. I therefore suggest that Plaintiff is unable to prove her *prima facie* case of discrimination and that Defendant's motion for summary judgment should be granted.

I further suggest that even if Plaintiff could show that she was qualified for the position, Defendant has articulated a "legitimate, non-discriminatory reason" for the employment decision, i.e., that Plaintiff could not meet the lifting requirements of the job. *See Braithwaite,* 258 F.3d at 493. I further suggest that Plaintiff could not show that the employer's reasons were pretextual. *See Burdine*, 450 U.S. at 255.

12

## 2. ADA and PWDCRA: Counts V and VI

Under the Michigan PWDCRA, claims may be analyzed in the same manner as those made under the ADA. *Collins v. Blue Cross Blue Shield of Mich.*, 228 Mich. App. 560, 568, 579 N.W.2d 435 (1998).

"An employer has notice of the employee's disability when the employee tells the employer that he is disabled." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998). In addition, there is some authority that "[a] person alleging a disability protected by the ADA has a burden of establishing with medical evidence the existence of the alleged disability, and presenting the documentation during the term of employment, not following termination." *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 657 (D.D.C. 1997). In the instant case, Plaintiff does not even allege that she requested an accommodation. (Doc. 17; Doc. 29 at 23, Ex. A at 95.) I therefore suggest that Defendant's motion for summary judgment should be granted as to this claim.

I further suggest that even if Plaintiff had requested an accommodation, Plaintiff would not be entitled to relief. The ADA provides:

> No covered entity shall discriminate against an individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA prohibits an employer from "denying opportunities . . . to an otherwise qualified individual with a disability, if such denial is based on the need of [the employer] to make reasonable accommodation." 42 U.S.C. § 12112(b)(5)(B). A qualified

13

individual is one "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

To establish a *prima facie* case under the ADA, a plaintiff must show: (1) that she has a disability; (2) that she was otherwise qualified for her position; and (3) that the employer subjected her to discriminatory treatment solely by reason of the disability. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996); *Hedrick v. Western Case System*, 335 F.3d 444, 454 (6th Cir. 2004) (noting that other circuits have held that an ADA plaintiff need show only that the disability was a motivating role rather than the sole reason for the adverse employment action but that *Monette* is still good law); *Macy v. Hopkins County School Bd. of Educ.*, 484 F.3d 357, 364 n.4 (6th Cir. 2007) (noting that the Sixth Circuit appears to have erroneously adopted the "solely" standard from cases applying the Rehabilitation Act's express language prohibiting discrimination under federal grants and programs "solely by reason of his or her disability," 29 U.S.C. § 794(a), and also noting that the ADA bars discrimination "because of the disability" with no mention of the word "solely[,]" but ultimately concluding that *Monette* is binding); *see also Everson v. Leis*, 412 Fed. App'x 771, 784-85 (6th Cir. 2011) (noting that "[b]ecause our 'solely because of' standard is in tension with the majority of circuits, I believe that our *en banc* court should consider the continued validity of our decisions").

I suggest that Plaintiff cannot show that she had a disability while she was under a restriction that she not lift fifty pounds or more. Under the ADA, a disability is defined as "either (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an

14

impairment." *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 480 (6th Cir. 2005) (citing 42 U.S.C. § 12102(2)). "The regarded-as-disabled prong of the ADA 'protects employees who are perfectly able to perform a job, but are rejected . . . because of the myths, fears and stereotypes associated with disabilities.'" *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008) (quoting *Gruener v. Ohio Casualty Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008)). The *Daugherty* court explained that

> [i]ndividuals may be regarded as disabled when (1) [an employer] mistakenly believes that [an employee] has a physical impairment that substantially limits one or more major life activities, or (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more [of an employee's] major life activities. In either case, it is necessary to show that the employer entertains misperceptions about the employee.

544 F.3d at 704 (citations omitted).

Major life activities are generally everyday activities "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "[T]he ADA compares the performance of an individual who alleges a restriction in a major life activity to that of 'most people.'" *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 627 (6th Cir. 2000). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). A plaintiff claiming an inability to work must show that her disability "significantly restrict[s] her ability to perform either a class of jobs or a broad range of jobs in various classes." *McKay v. Toyota Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir. 1997). The corollary is also true, i.e., an impairment that prevents a person from performing only a narrow range of jobs is not considered a substantially limiting one. *Id.*

15

I suggest that Plaintiff's inability to lift fifty pounds or more restricted only her ability to perform a narrow range of jobs rather than a broad class or range of jobs. *See Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) ("we hold, as a matter of law, that a twenty-five pound lifting limitation – especially when compared to an average person's abilities – does not constitute a significant restriction of one's ability to lift, work, or perform any other major life activity"). I therefore suggest that Plaintiff cannot meet the *prima facie* case standard regarding limitation of a major life activity.

For the same reasons stated under the Title VII/ELCRA analysis, I further suggest that Plaintiff was not a qualified individual and thus, cannot meet the *prima facie* case of discrimination standards. I therefore suggest that Defendant's motion for summary judgment should be granted on these ADA and PWDCRA claims.

### 3. ERISA: Count VII

Plaintiff did not respond to Defendant's motion as to this claim. I therefore suggest that this claim has been abandoned. *See Strayhorn v. Wyeth Pharmaceuticals, Inc.*, ___ F. Supp. 2d ___, 2012 WL 3217672, at *5 n.13 (W.D. Tenn. Aug. 8, 2012) (collecting cases showing that "[d]istrict courts in this Circuit routinely grant summary judgment as to claims a plaintiff fails to support or address in a response to a motion for summary judgment").

Even if the claim had not been abandoned, I suggest that Defendant would be entitled to summary judgement because Plaintiff has not alleged that she attempted to exercise any right under ERISA. *See Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 628 (6th Cir. 2008).

### 4. FMLA: Count VIII

16

To prevail on an interference/entitlement claim under the FMLA, a plaintiff must show that: (1) she is an eligible employee, (2) the employer is a covered employer under the Act, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take foreseeable leave, and (5) the employer denied her FMLA benefits to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The employer's intent is not relevant to an interference or entitlement claim. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). However, plaintiffs seeking relief under the interference or entitlement section must prove that the employer's interference caused them harm. *Id.* Interference does not violate the Act if the "employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id.*

In the instant case, Plaintiff concedes that she was informed by Ms. Doyle that she was eligible for leave under the FMLA and that she declined to take the leave. (Doc. 8 ¶ 27; Doc. 32 at 12.) I therefore suggest that she cannot state a claim for FMLA interference and that Defendant's motion for summary judgment should be granted as to this claim.

### E.     Conclusion

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be granted and that the case be dismissed in its entirety.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another

party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.

           s/ Charles E. Binder
           CHARLES E. BINDER
Dated: September 5, 2012           United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: September 5, 2012        By    s/Patricia T. Morris
                                      Law Clerk to Magistrate Judge Binder